IN CLERK'S OFFICE
U.S. DISTRICT COURT, N.Y.
★     SEP 3 0 2003     ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X     01 CV 5852 (ARR)
                                                                       :
IN RE KeySpan Corporation Securities Litigation                        :     NOT FOR ELECTRONIC
                                                                       :     OR PRINT
--------------------------------------------------------------------- :     PUBLICATION
                                                                       X
                                                                             OPINION AND ORDER

ROSS, United States District Judge:

  Lead plaintiffs, Donald Kassan and Peter Hubbard (collectively, "lead plaintiffs"), and

the class representative, Howard Frank ("class representative"), have submitted for approval a

Proposed Settlement and Plan of Allocation ("the settlement") involving a $13.75 million

settlement of litigation stemming from defendants' alleged false and misleading statements

resulting in the artificial inflation of the price of defendant company's stock. Counsel for the

plaintiff class, Weiss & Lurie and Cauley Bowman Carney & Williams, LLP (collectively,

"class counsel"), also seek attorneys' fees for their efforts in successfully prosecuting the case

and reimbursement of expenses. In addition, class counsel seek reasonable compensation for

lead plaintiffs and the class representative pursuant to 15 U.S.C. § 78u-4(a)(4). For the reasons

discussed below, the court approves the settlement pursuant to Rule 23(e) of the Federal Rules

of Civil Procedure. The court also awards attorneys' fees in the amount of $2.75 million and

authorizes reimbursement of expenses in the amount of $516,194.26. The court declines to

award any compensation to lead plaintiffs and the class representative beyond each party's pro

rata share of the settlement fund.

## BACKGROUND

By consolidated class action complaint, filed May 13, 2002, lead plaintiffs—representing a proposed class of persons who purchased stock in defendant KeySpan Corporation ("Keyspan") between November 4, 1999 and January 24, 2002—alleged that KeySpan and thirteen of its most senior officers and directors ("individual defendants"; collectively with KeySpan, "defendants"), violated Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 of the regulations promulgated thereunder, 17 C.F.R. § 240.10b-5. Plaintiffs also asserted claims, including allegations of insider trading, against individual defendants. By order dated March 18, 2003, the court granted defendants' motion to dismiss the consolidated complaint primarily due to plaintiffs' failure to meet the pleading requirements under Rule 10b-5, which require adequately alleging facts giving rise to a strong inference of scienter. The court, however, authorized plaintiffs to replead portions of the complaint relating to the nondisclosure of operational and financial problems at Roy Kay, Inc., a KeySpan subsidiary. Pursuant to the March 18, 2003 order, plaintiffs filed an amended complaint alleging a shorter class period, dating from March 24, 2000 to July 17, 2001. By order dated July 30, 2003, the court denied defendants' motion to dismiss the amended complaint but granted defendants' motion to strike allegedly false statements from the year 2000. In November 2003, the court issued an order, making explicit what was implicit in the July 30, 2003 order: The court struck all allegedly false statements made in the year 2000 and concluded that plaintiffs failed to plead scienter for any statements prior to January 2001 or at the earliest the very end of 2000.

A. *The Settlement*

Under the proposed settlement, defendants will pay $13.75 million ("Settlement Fund") to the settlement class. Settlement Stip. ¶ 3(a). The settlement class is limited to persons who purchased stock in KeySpan between March 24, 2000 and July 17, 2001. Id. ¶ 1(j)-(k). The Settlement Fund less taxes, approved costs, fees, and expenses ("Net Settlement Fund") will be distributed to settlement class members who submit acceptable proofs of claim ("Authorized Claimants"). Id. ¶ 4-5. The claims administrator will determine each Authorized Claimant's pro rata share of the Net Settlement Fund based on the purchase and sales dates of the Authorized Claimant's shares.[1] According to lead plaintiffs, average recovery per share will be approximately $0.33 before deduction of court-approved fees and expenses and the costs of

---

[1] The following table, which lists the proposed recovery calculation by date of purchase and sale, indicates that claimants with the stronger factual basis for scienter will receive a greater percentage recovery. See Joint Declaration of Joseph H. Weiss and J. Allen Carney in Support of Final Approval of the Proposed Settlement and Plan of Allocation ("Weiss & Carney Joint Declaration") ¶ 15.

| | Sold on or before 7/16/01 | Sold 7/17/01-10/14/01 | Retained through 10/14/01 |
|---|---|---|---|
| Purchased 3/24/00-12/10/00 | No recovery | Lesser of 2.0% of purchase price or difference between purchase price and average closing price on date of sale | Lesser of 2.0% of purchase price or difference between purchase price and $32.00 |
| Purchased 12/11/00-1/24/01 | No recovery | Lesser of 3.0% of purchase price or difference between purchase price and average closing price on date of sale | Lesser of 3.0% of purchase price or difference between purchase price and $32.00 |
| Purchased 1/25/01-7/17/01 | No recovery | Lesser of 5.1% of purchase price or difference between purchase price and average closing price on date of sale | Lesser of 5.1% of purchase price or difference between purchase price and $32.00 |

See Preliminary Approval Order Ex. A ¶ E. Average closing price on date of sale based on the table provided at id. ¶ E(4).

settlement notice and administration. Order Preliminarily Approving Settlement ("Preliminary Approval Order") Ex. A at 2.

B. *Procedural History of the Settlement*

On November 16, 2004, the court preliminarily approved the settlement. Following preliminary approval, each class member received individual notice of the settlement. Affidavit of Michael Rosenbaum Re: Mailing and Publication of Notice ¶ 5. Summary notice was also published once in the national editions of the Wall Street Journal and USA Today on December 7, 2004. Id. ¶ 7. Class counsel moved for approval of attorneys' fees, reimbursement of expenses, and monetary recovery by named plaintiffs on January 31, 2005. Class counsel moved for final approval of the settlement on February 16, 2005. Only two written objections were filed.[2] The court held a fairness hearing on March 2, 2005, and no objectors appeared.

## DISCUSSION

A. *The Settlement Class*

In November 2004, the court preliminarily certified the settlement class solely for the purposes of effectuating the settlement. Preliminary Approval Order ¶ 3. The parties now seek formal certification of the class.

---

[2] The objections were made by Charles R. Oleszycki and Irving and Mildred Hiller. Neither potential class member objects to the terms of the settlement. In fact, Mr. Oleszycki objected to the magnitude of the requested attorneys' fees, which is addressed in detail below. The Hillers' objection is simply a technical detail, which, as discussed below, has been sufficiently addressed by counsel. Thus, neither objection presents an obstacle to approving the settlement.

The use of a settlement class allows the parties to expedite settlement negotiations by conceding the propriety of a class action. It also allows the court to delay formal certification of the class until after the completion of settlement negotiations. In <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591 (1987), the Supreme Court recognized use of the settlement class device and held that it may only be certified if all the requirements for class certification under Rule 23 are met. <u>Id.</u> at 620. When considering whether to certify a settlement class, the fact of settlement is "relevant to class certification" and compels "heightened" attention to the requirements of Rule 23 that are "designed to protect absentees by blocking unwarranted or overbroad class definitions." <u>Id.</u> Rule 23(a) specifies the prerequisites for class certification:

> (1) [T]he class [must be] so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, where, as here, the plaintiffs seek certification of the class under Rule 23(b)(3), they must show that common questions of law or fact "predominate over any questions affecting only individual members" and that the class action is the superior device for "fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The settlement class in this case is defined as follows: "[A]ll persons who purchased the common stock of KeySpan during the Settlement Class Period [from March 24, 2000 through July 17, 2001], excluding Defendants, members of the Individual Defendants' immediate families, the members of the Kay family that formerly served as senior officers of Roy Kay, Inc., any entities in which any Defendant has or had controlling interest, any entities that are a parent or subsidiary of or are controlled by KeySpan, and any affiliates, legal

representatives, heirs, predecessors, successors and assigns of any of the Defendants."

Settlement Stip. ¶ 1(j)-(k). The court is satisfied that (1) this settlement class meets the four

prerequisites of Rule 23(a); (2) common questions of law or fact predominate over any

questions only affecting individual class members; and (3) a class action is superior to other

available methods for the fair and efficient adjudication of the controversy. Therefore, final

certification of the settlement class is proper.

B. *Standard for Approving a Proposed Settlement*

Pursuant to Rule 23(e), the court must approve any settlement of a class action. Fed. R.

Civ. P. 23(e)(1)(A). The court's standard for approval is that the settlement is "fair, adequate,

and reasonable, and not a product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir.

2000). The discretion to grant or deny such approval lies within the discretion of the trial court

and should be exercised in light of the general policy favoring settlement. See Weinberger v.

Kendrick, 698 F.2d 61, 73 (2d Cir. 1982). When the court considers whether to approve or

deny a proposed settlement, it "must eschew any rubber stamp approval in favor of an

independent evaluation," but "it must stop short of the detailed and thorough investigation that

it would undertake if it were actually trying the case." City of Detroit v. Grinnell Corp., 495

F.2d 448, 462 (2d Cir. 1974), abrogated on other grounds by Goldberger v. Integrated Res.,

Inc., 209 F.3d 43 (2d Cir. 2000).

Fairness is evaluated by examining (1) the negotiation process that led up to the

settlement, and (2) the substantive terms of the settlement. See In re Holocaust Victim Assets

Litigation, 105 F. Supp. 2d 139, 145 (E.D.N.Y. 2000). "The [negotiation] process must be

examined 'in light of the experience of counsel, the vigor with which the case was prosecuted,

and the coercion or collusion that may have marred the negotiations themselves.'" Id. at 145-46 (quoting Malcham v. Davis, 706 F.2d 426, 433 (2d Cir. 1983)). The specific factors relevant to the procedural fairness inquiry are (1) whether the settlement was the product of arms-length negotiations and (2) whether class counsel have the experience and ability to properly evaluate the terms of the settlement and have engaged in discovery necessary to effectively represent the class's interests. See D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).

The factors relevant to the substantive fairness of a proposed settlement include (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. See Grinnell, 495 F.2d at 463.

1. *Procedural Fairness*

There is no evidence that the settlement is the product of collusion or coercion. An experienced mediator, Stephen A. Hochman, assisted the parties in numerous settlement discussions over the course of two-and-a-half months, beginning April 20, 2004. Declaration of Stephen A. Hochman in Connection with Final Approval of the Proposed Settlement ¶¶ 3, 5. He attested that "[t]he negotiations between the parties ... were contentious and hard-fought" and that "the parties had very divergent views of the merits of their positions." Id. ¶ 3. In fact,

each side rejected several proposals and came to an agreement only when the mediator himself presented a proposal based on his own "objective analysis of the liability and damage issues." Id. ¶¶ 5, 6. Given that the parties used a mediator, held numerous, contentious settlement discussions, and relied on the mediator's own settlement proposal, the court is satisfied that the settlement was made at arm's length and, therefore, was not the product of collusion or coercion.

The skill and experience of counsel and the extensive discovery in the case adequately informed the parties of the merits of their cases. Class counsel and defendants' counsel possess the requisite expertise in class action litigation, specifically in the field of securities law, to negotiate a fair settlement.[3] See Weiss & Carney Joint Declaration ¶ 22. Discovery commenced on December 5, 2003, and involved voluminous document exchange, depositions of KeySpan employees, and retention of accounting and damage experts. Id. ¶ 18(12)-(14). Considering the good-faith negotiation process, the skill and experience of counsel, and the sufficiency of discovery, the court concludes that the settlement is "fair, adequate, and reasonable, and not a product of collusion." Joel A., 218 F.3d at 138.

2. *Substantive Fairness*

a. *The Complexity, Expense, and Likely Duration of the Litigation*

Because this case, like other securities class actions, involves numerous complex legal and factual issues, a trial on the merits would consume considerable time and resources. The issues of law and fact plaintiffs identify include proving that 1) defendants participated in

---

[3] Simpson Thatcher & Bartlett LLP represented KeySpan, and Dickenstein Shapiro Morin & Oshinsky LLP represented the individual defendants.

public dissemination of false or misleading information; 2) the information was material to investors in determining whether to invest in KeySpan securities; 3) the false or misleading information impacted the market price of Keyspan securities; 4) the dissemination of false or misleading information caused damages to the class; and 5) defendants acted with scienter.

Defendants have adamantly contested their liability throughout the litigation and establishing liability would no doubt result in the introduction of conflicting testimony and evidence. The issue of damages also presents uncertainties, particularly because defendants may not be held liable for damages caused by factors extraneous to the Roy Kay acquisition that also affected KeySpan's stock price during the time period at issue. Therefore, were the lawsuit to proceed, both parties would rely on expert testimony on the issue of damages, likely resulting in dueling experts and heightening the complexity of the proof. A jury's verdict would likely be appealed, thereby extending the duration of the litigation.

The complex legal and factual issues related to defendants' liability and the question of damages would significantly delay any recovery plaintiffs might eventually obtain. Moreover, counsel's time and expenses would steadily increase, potentially diminishing the class members' ultimate recovery. Based on the foregoing, the court concludes that the complexity, expense, and likely duration of the litigation weighs in favor of approving the settlement. See, e.g., Maley v. Del Global Tech. Corp., 186 F.Supp.2d 358, 362 (S.D.N.Y.2002) ("Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial. These factors weigh in favor of the proposed [s]ettlement"); Klein ex rel. Ira v. PDG Remediation, Inc., No. 95 Civ. 4954, 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999) (complexity, expense, and likely duration of litigation favored settlement that "offer[ed] [c]lass

members the benefit of immediate recovery as opposed to an uncertain award several years from now").

b. *The Reaction of the Class to the Settlement*

Despite the huge potential size of the class here, only two class members filed timely objections of any sort. Weiss & Carney Joint Declaration ¶ 9. Of the approximately 85,000 potential members of the class, the Settlement Administrator received only 94 requests for exclusion. Id. ¶ 12. Of the two objections filed, one relates to attorneys' fees. The other objection relates to a minor technical detail, not the substance, of the settlement. Nonetheless, it has been sufficiently addressed by class counsel and does not weigh against approval of the settlement.

Specifically, Irving and Mildred Hiller complain that "dismissal of claims that amount to under $10 is unfair and unreasonable where a beneficial owner has several claims with the same [social security] number, which when combined total more than $10, even if one or more of the claims is for less than $10." Objection of Irving Hiller and Mildred Hiller dated January 18, 2005 at 1. Class counsel responds that the Hillers' objection stems from a misunderstanding of the de minimus standard in the settlement. In their memorandum of law, class counsel clarify that under the terms of the stipulation, if class members file claims under their own names, and therefore on the same proof of claim form, all transactions relating to Keyspan will be aggregated. Based on class counsel's response to the Hillers' complaint, the court is satisfied that the Hillers will be able to aggregate their claims, even those claims under the $10 threshold.

Given that there few opt-outs relative to the large size of the class and the only objection does not relate to the substance of the settlement and appears to be a misunderstanding, the court finds there is a strong endorsement of the settlement by class members.

c. *The Stage of Proceedings and the Amount of Discovery Completed*

The third factor also favors approval. Since the initiation of this litigation over four years ago, the parties have engaged in mediation, extensive discovery, motion practice (including two motions for dismissal), and one round of protracted settlement negotiations. In addition, the parties had the benefit of the court's decisions clarifying the scienter issue and expert opinions on the loss in stock value attributed to the Roy Kay acquisition. Thus, by the time the settlement was achieved, both sides were in a position to make informed judgments about the merits of the case and the settlement.

d. *The Risks of Establishing Liability*

As with many class action securities cases, continued litigation of this case would involve risks to the plaintiffs. As discussed earlier, plaintiffs face legal and factual obstacles to proving their case, including establishing that defendants acted with scienter. Defendants have legal and factual defenses that may prevail in the pretrial stage or at trial. If the action were to proceed, defendants would also present expert testimony on a number of complex disputed legal and factual matters, thereby increasing plaintiffs' litigation risks.[4] Plaintiffs would

---

[4] Class counsel acknowledge that, although they believe their case has merit, they recognize "the significant risk of proving liability against Defendants." Memorandum of Law in Support of Motion for Final Approval of the Settlement and Plan of Allocation ("Final Approval Brief") at 28.

confront significant difficulties in litigating their claims and might not recover anything at all. When viewed against the substantial and certain benefits that a settlement would provide, these considerations support approval of the settlement. See, e.g., In re Holocaust Litig., 80 F. Supp. 2d at 177.

e. *Plaintiffs' Chances of Establishing Damages*

Even if plaintiffs could prove defendants' liability, they would still face the daunting task of establishing that each class member's damages (if any) resulted from defendants' alleged misconduct and the amount of any such damages. See Dura Pharm., Inc. v. Broudo, 125 S.Ct. 1627, 1633 (2005); see also Emergent Capital Inv. Mgt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 197 (2d Cir. 2003).

Defendants have contended that, even if plaintiffs could prove their allegations of wrongdoing, they still could not establish that the alleged misconduct actually caused plaintiffs' losses. Specially, they have argued that any such losses resulted from general market and industry conditions, rather than from KeySpan's alleged misrepresentations, omissions, or misconduct. Even if plaintiffs could establish some amount of loss causation, they still would need to prove how much of their loss resulted from KeySpan's alleged misconduct, rather than from industry-wide or other macroeconomic factors.

Calculation of damages is a "complicated and uncertain process, typically involving conflicting expert opinions" about the difference between the purchase price and the stock's "true" value absent the alleged fraud. Maley, 186 F. Supp. 2d at 362. Under these circumstances, the risks faced by the class in establishing damages are substantial and this factor favors settlement.

12

*f. Risks of Maintaining Class Action Through Trial*

This class has been certified solely for the purpose of effectuating the settlement. If this case did not settle, defendants might contest class certification, thereby creating appreciable risks to class members' potential for recovery. See, e.g., In re Blech Sec. Litig., No. 94 Civ. 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002). Even if plaintiffs were to obtain class certification, there would be a risk of decertification at a later stage. See In re Visa Check/MasterMoney Antitrust Litig., 192 F.R.D. 68, 89 (E.D.N.Y. 2000) ("If factual or legal underpinnings of the plaintiffs' successful class certification motion are undermined once they are tested under a more stringent standard . . . a modification of the order, or perhaps decertification, might then be appropriate."). Thus, as with any class action, the risks associated with initial certification and the potential for decertification weigh in favor of approving the settlement.

*g. Defendants' Ability to Withstand Greater Judgment*

Class counsel acknowledges that defendants could withstand greater judgment. Standing alone, this factor does not suggest that the settlement is unfair. See In re PaineWebber Litig., 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate."). This is especially true where, as here, the other Grinnell factors weigh heavily in favor of settlement approval. See D'Amato, 236 F.3d at 86 (upholding approval of settlement where, despite defendants' ability to withstand greater judgment, settlement was fair in light of other Grinnell factors).

13

*h. Range of Reasonableness in Relation to Potential Recovery and Attendant Risks of Litigation*

The final two Grinnell factors—the reasonableness of the settlement in light of the best possible recovery and the risks of litigation—also weigh in favor of settlement approval. As noted above, the parties disagree on the amount of potential recovery even if plaintiffs were to prevail on liability. Class counsel acknowledges that the amount of recovery is a fraction of the potential recovery. Counsel argues, however, that the monetary relief in the proposed settlement of $13.75 million (before certain settlement-related expenses) represents 50% or more of the likely recovery were the case to go to trial.[5]

Although the settlement is not great in comparison to the vast damages plaintiffs claim to have suffered, the settlement need only fall within a requisite "range of reasonableness." Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972). "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." Grinnell, 495 F.2d at 455 (approving settlement that was only 12% of potential recovery); see also Brown v. Steinberg, No. 84 Civ. 4654, 1990 WL 145151, at *2 (S.D.N.Y. Sept. 22, 1990) (approving settlement that was 30-50% of potential recovery); In re Independent Energy Holdings PLC, No. 00 Civ. 6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (approving settlement that was 30% of potential recovery). Assuming the accuracy of damages estimates by

---

[5] According to class counsel, conservative estimates by plaintiffs' expert place damages attributable to Roy Kay, which are arguably plaintiffs' strongest claims, at no more than $0.61 per share. The estimated per share recovery via settlement is $0.33. Based on these figures, class counsel concludes that class members will recover through settlement approximately 54% of their potential recovery. See Final Approval Brief at 33-34.

plaintiffs' expert, the court finds that the settlement of $13.75 million falls within the range of reasonableness.

For all of the foregoing reasons, the court finds that the proposed settlement is fair, reasonable, and adequate.

C. *Attorneys' Fees and Incentive Awards*

Class counsel's fee application and request for incentive awards for lead plaintiffs and the class representative were referred to the Honorable Marilyn D. Go, United States Magistrate Judge. On August 25, 2005, Judge Go filed a thorough and cogent report recommending that this court (1) award attorneys' fees in the amount of $2,750,000, representing 20% of the Settlement Fund; (2) grant reimbursement of expenses in the amount of $516,194.26; (3) grant class counsel's request for pro rated interest; and (4) deny the request for incentive awards to lead plaintiffs and the class representative. Class counsel filed timely objections to the Report and Recommendation. Specifically, class counsel object to Judge Go's recommendation to award attorneys' fees amounting to 20% of the settlement rather than 33 1/3% of the settlement, as counsel requested. In addition, counsel object to Judge Go's conclusion that courts in this district do not reimburse attorneys for the costs of electronic research. Counsel also offer additional evidence to support their request for incentive awards for lead plaintiffs and the class representative.

Pursuant to 28 U.S.C. § 636(b)(1), this court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Upon de novo review of those portions of the record to which objections were made, the court may affirm, modify, or reject the recommendations. § 636(b)(1). The

court is not required to review, under a de novo or any other standard, portions of the report and recommendation to which no objections are addressed. See Thomas v. Arn, 474 U.S. 140, 150-52 (1985).

1. *Objection to Judge Go's Application of the Goldberger Factors*

Class counsel object to Judge Go's conclusion that the application of the standard established by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000), disfavors granting counsel's fee request of 33 1/3% of the settlement. Under Goldberger, the court must consider the following factors to determine whether a requested fee is reasonable: (1) the risk of the litigation; (2) the magnitude and complexities of the litigation; (3) the time and labor expended by counsel; (4) the quality of representation; (5) the requested fee in relation to the settlement; (6) public policy considerations. Counsel does not object to Judge Go's assessment of the third and sixth factors. Thus, the court will address only counsel's objections to the remaining four factors.

a. *Factor 1: Risk of Litigation*

Class counsel claim that Judge Go erred in her evaluation of the risks of the litigation. In her report, Judge Go concludes that counsel have not demonstrated that they faced greater risks in this case than in the average securities class action case. Report and Recommendation dated August 25, 2005 ("Report & Recommendation) at 14. They argue that Judge Go erred in her general conclusion that "plaintiffs in securities actions face no appreciable risk of non-recovery." Report & Recommendation at 12. Counsel challenge Judge Go's evaluation of academic studies that have examined the dismissal and settlement rates of securities actions after the enactment of the Private Securities Litigation Reform Act of 1995 (PSLRA), which

created heightened pleading requirements for securities cases. Based on her careful review of journal articles and statistical reports, Judge Go concludes that the increase in dismissal rates and decrease in settlement rates after the enactment of PSLRA were modest at best. Thus, in her opinion, the risk of non-recovery in securities cases was not appreciably higher due to PSLRA to warrant a retreat from Goldberger's holding that "compensation for risk ... is not an appropriate starting assumption" for securities class actions. 209 F. 3d at 52. Counsel argue that this conclusion is based on a "blind reliance" on statistics rather than an individual assessment of the facts. Objections to the August 25, 2005 Report and Recommendation of the Magistrate Judge Related to the Award of Attorneys' Fees and Reimbursement of Expenses ("Objections Memo") at 18. Counsel then challenge Judge Go's evaluation of the relevant statistics and the validity of particular sources cited by the report. Even if counsel's criticism has some merit, counsel misunderstand the point. Judge Go does not cite generalized statistics to establish that the risk of non-recovery in this particular case is low. She offers the statistics simply to check the present-day validity of the Second Circuit's observation in Goldberger that securities class actions are generally not so risky that they require greater compensation. In fact, Judge Go conducts a lengthy "individual assessment of the facts" to determine whether the risk of non-recovery in this case is high. See Report & Recommendation at 14-19. Thus, counsel's objection to Judge Go's use of generalized statistics is without merit.

Class counsel also contend that Judge Go failed to acknowledge that plaintiffs faced a particular challenge in finding sufficient evidence to survive the pleading stage. Counsel argue that their "determined efforts, hard and persistent work and creative legal sleuthing ... caused the great risks attendant to this particular case to become ameliorated at the pleading stage."

Objections Memo at 15. More specifically, counsel argue that the risks of non-recovery were high until they recovered the transcript of a taped conversation of January 25, 2001, several work-in-progress ("WIP") reports, and other deposition testimony. In her report, Judge Go commends counsel for their efforts in obtaining these documents, but she correctly notes that the existence of the documents tends to reinforce the merits of plaintiffs' case. Report & Recommendation at 18. Counsel complain that Judge Go "incorrectly faults Lead Counsel for failing to include this material in the prior complaints." Objections Memo at 16 n.9. Counsel describes in great detail their efforts to recover these documents.[6] Judge Go does not dispute that counsel made active efforts to find the documents. Rather, Judge Go questions the timing of counsel's efforts to obtain the documents. Counsel fail to offer any indication that these materials were not in existence at the time plaintiffs' attorneys submitted their initial complaints or when counsel submitted the consolidated complaint. Moreover, counsel claim that some of the Monmouth County litigation files were attached as exhibits to the consolidated complaint and "led to the additional leads that much later produced the facts included in the Amended Complaint." Id. Based on this statement, counsel acknowledge that they had access to the content of the Monmouth County litigation files and therefore also had the opportunity to follow the leads arising from the content of those files before filing the consolidated

---

[6] Class counsel also place great weight on this court's dismissal of the consolidated complaint, arguing that the court's action indicates the case was high-risk in the initial stages of litigation. See Objections Memo at 15-16. Although plaintiffs failed to sufficiently plead their case in the consolidated complaint, this court acknowledged that plaintiffs may have a strong claim and granted leave to replead rather than dismissing the case with prejudice. In fact, rather than demonstrating the high risk of non-recovery, the court's decision to grant plaintiffs another bite at the apple enhanced plaintiffs' ability to address weaknesses in their case and survive the second motion to dismiss.

complaint.[7] Simply citing their efforts to retrieve documents necessary to the success of their

client's case is insufficient to establish that the risk of non-recovery in this case was high.

Thus, the court is persuaded by Judge Go's conclusion that "the risk in this action fell in the

lower end of the spectrum of securities fraud actions." Report & Recommendation at 19-20.[8]

---

[7] Counsel sought no extension to file the consolidated complaint and filed it in a timely
manner on May 13, 2002, less than one month after the court set up the briefing schedule.
Although this court appreciates the timely filing of papers, it is not opposed to granting
extensions if necessary.

[8] Counsel also object to Judge Go's conclusion that counsel failed to establish the high
risk of proving damages in this litigation. In their fee application, counsel only offered general
descriptions of the complex nature of damages calculations in securities class actions. See
Memorandum of Law in Support of Class Counsel's Application for an Award of Attorneys'
Fees and Reimbursement of Expenses ("Fee Application") at 19-20. Now, however, counsel
offer a more nuanced argument. Counsel claim that the difficulty of proving damages in this
case was even more substantial than most securities cases because KeySpan disclosed "other
information unrelated to the alleged fraud ... on the same day as the curative disclosure alleged to
be responsible for the drop in the defendant company's stock." Objections Memo at 22 n.15.
Counsel argue that this confluence of announcements created a higher risk of non-recovery
because of the difficulty of disentangling the drop in stock price associated with the alleged fraud
from other potentially negative disclosures. In support of this argument, counsel supplement the
record with a declaration from one of their experts, John C. Hammerslough. Under § 636(b)(1),
the court is permitted, in its discretion, to receive supplemental evidence when reviewing a
magistrate judge's report and recommendation, "[b]ut it is well-established that the court may
also decline to exercise its discretion to allow such supplementation." U.S. Fid. & Guar. Co. v.
J. Elec. Contracting Corp. 62 F. Supp. 2d 915, 917 (E.D.N.Y. 1999). The Second Circuit has
held that "[i]n objecting to a magistrate's report before the district court, a party has 'no right to
present further testimony when it offer[s] no justification for not offering the testimony at the
hearing before the magistrate.'" Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir.
1994) (quoting Pan Am World Airways, Inc. v. Int'l Bhd. of Teamsters, 894 F.2d 36, 40 n.3
(2d Cir.1990)). Here, counsel offer no explanation for their failure to submit the
Hammerslough Declaration before the magistrate judge. Thus, the court will exercise its
discretion not to consider the supplemental evidence. The court notes, however, that nothing in
the Hammerslough Declaration suggests that the calculation of damages in this case was more
challenging than the average securities class action case. Given that counsel's objection is
based on conclusory statements, unsupported by the record, the court finds Judge Go's
conclusion more persuasive here.

b. *Factor 2: Magnitude and Complexity of the Litigation*

Counsel also object to Judge Go's conclusion that the legal and factual issues faced by counsel were relatively straightforward. Counsel argue that Judge Go failed to apply the correct test to evaluate the magnitude and complexity of a case under Goldberger. Judge Go evaluated the magnitude and complexities of this case in comparison to other securities class actions. According to counsel, "[t]he correct test is whether the issues in this case and the nature of the burdens undertaken added complexity to the litigation when compared to the typical fraud case." Objections Memo at 25. There is simply no basis for counsel's assertion. Both case law and common sense support Judge Go's decision to evaluate the magnitude and complexity of this case compared to cases within the same general category (i.e., securities class actions). See, e.g., In re Bristol-Myers Squibb Sec. Litig., 361 F. Supp. 2d 229, 234 ("Among securities class actions, this case as a whole was neither unique nor complex."). As Judge Go explained in her report, simply noting the difficulty of establishing scienter, the need for expert testimony, and the voluminous discovery involved does not meet counsel's burden under the magnitude and complexity prong of the Goldberger test. In re Arakis Energy Corp. Sec. Litig., No. 95 Civ. 3431, 2001 WL 1590512, at * 11 (E.D.N.Y. Oct. 31, 2001) (listing numerous factors, in addition to the difficulty of proving scienter, that demonstrated the magnitude and complexity of case, such as size of class, number of actions filed prior to consolidation, number of law firms involved, need for international discovery, research and litigation necessary to draft letters rogatory). Given that counsel have failed to point out even one factor suggesting that the magnitude and complexity of this case is different from the average securities class action, the court dismisses counsel's objection on this issue.

c. *Factor 4:  Quality of Representation*

Counsel also argue that Judge Go did not accurately assess the fourth <u>Goldberger</u> factor, quality of representation.  Judge Go evaluated the quality of counsel's work by reviewing the results of the settlement and the quality of opposing counsel.  She concluded that opposing counsel were experienced and fought the case vigorously.  However, she did not believe she had the information necessary to accurately evaluate the results of the settlement.  Nonetheless, she ultimately concluded that "the quality of representation in this case is not a factor weighing against a large fee award."  Report & Recommendation at 25.  Counsel argue that Judge Go's "simple misunderstanding of the facts and applicable damages-per-share calculations" resulted in her failure to credit counsel for their work in procuring a "remarkable" settlement for the class.  Objections Memo at 25.  Regardless of whether Judge Go misunderstood counsel's evidence on the class's potential recovery, the court is reluctant to accept counsel's figures, which are based on plaintiffs' expert's report, for the purpose of determining whether counsel is entitled to an enhancement in attorneys' fees.  <u>See</u> <u>Goldberger</u>, 209 F.3d at 55-56 (declining to accept expert's report unquestioningly "because it has not been tested through the adversarial process ... and all such reports are singularly susceptible to attack.").  Moreover, "a big recovery does not necessarily justify a quality multiplier."  <u>Id.</u> at 56 (recognizing that size of class or scope of defendants' acts can contribute to large settlement); <u>see also</u> <u>In re Elan</u>, No. 02-0865, 2005 WL 911444, at *10 (S.D.N.Y. Apr. 20, 2005) (holding that factors other than skill of plaintiffs' counsel contributed to defendant's decision to settle).  Here, the court is satisfied with Judge Go's conclusion that the quality of representation was adequate but does not justify an enhancement in fees.

d. *Factor 5: Requested Fee in Relation to the Settlement*

Class counsel also object to Judge Go's assessment of the fifth Goldberger factor, the relation of the requested fee to the settlement. In spite of acknowledging that "circumstances of the individual case should guide a court in awarding fees," counsel argues that Judge Go failed to recognize that other courts have granted attorneys' fees of 25% to 33 1/3% in cases with settlement recoveries of $20 million or less. Objections Memo at 30. Goldberger clearly suggests that comparison to awards in other cases is of limited usefulness. See 209 F.3d at 53 (holding that "a fee award should be assessed based on scrutiny of the unique circumstances of each case"). In her report, Judge Go emphasized that the "unique circumstances" of this case, namely the average risk and complexity involved, warranted a finding that the requested fees were excessive relative to the size of the settlement. The court is sufficiently persuaded by Judge Go's analysis here and dismisses counsel's objection as lacking merit.

2. *Objection to Judge Go's Lodestar Cross-Check*

Class counsel also have objections to Judge Go's detailed lodestar analysis. After reviewing the rates and time spent by counsel on this case, Judge Go concluded that a 1.14 multiplier is reasonable because the lodestar calculated by counsel is inflated. In brief, counsel argue that the Report and Recommendation erred by finding that 1) the rates for associates at comparable firms participating in securities class actions were no more than $500 per hour; 2) billing in bankruptcy cases, which were cited by counsel, is not comparable to securities cases; 3) law clerks and paralegals were billed at excessive rates compared to the prevailing market rates; and 4) the hours spent on the consolidated complaint were excessive. None of these findings, individually or combined, significantly affect Judge Go's central conclusion that

22

counsel's lodestar is inflated. Moreover, counsel does not even question Judge Go's most significant finding: the inappropriate staffing of partners at Cauley Bowman, where partners worked for 57% of total attorney time (compared to only 10% of total attorney time at Weiss & Lurie). See Report & Recommendation at 35. Given that the inappropriate staffing of partners likely contributed the most to the inflated lodestar, the court finds Judge Go's lodestar analysis persuasive.

3. *Objection to Judge Go's Recommendation to Not Reimburse Electronic Research Costs*

Class counsel argue that it is entitled to reimbursement for the costs of electronic research. Relying on a number of cases in this district and elsewhere, Judge Go recommended no reimbursement of electronic research costs. See Report & Recommendation at 44. In an attempt to distinguish this case, counsel argue that the cases cited in the report do not involve common funds. Instead, counsel argue, the cases involve statutory or contractual fee-shifting, which places pressure on the court to reduce the burden on the losing party. Counsel's argument is without merit. Counsel cites no authority for this proposition, and the court cannot find any language in the case law supporting counsel's argument. Moreover, at least one case cited in the report involves a common fund. See In re PaineWebber Ltd. P'ship Litig., No. 94 Civ. 8547, 2003 WL 21787410, at *7 (S.D.N.Y. Aug. 4, 2003) (granting no reimbursement for electronic research in securities class action that resulted in settlement fund ). The Second Circuit has held that "computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." United States ex rel. Evergreen Pipeline Construction Co v. Merritt Meridian Construction Corp., 95 F.3d 153, 173 (2d Cir. 1996). However, "it meant not that electronic research costs

could be recovered if included in the attorney's fee application, but rather that they were already reflected in the lodestar calculation." King v. JCS Enterprises, Inc., 325 F. Supp. 2d 162, 172 (E.D.N.Y. 2004). The court rejects counsel's objection and agrees with Judge Go's recommendation not to reimburse counsel for electronic research costs.

4. *Objection to Judge Go's Recommendation to Not Award Compensation to Lead Plaintiffs and the Class Representative*

Class counsel also object to Judge Go's recommendation to deny counsel's request for reasonable compensation for lead plaintiffs and the class representative pursuant to 15 U.S.C. § 78u-4(a)(4). Judge Go based her recommendation on the fact that counsel failed to provide any specific factual basis for determining the extent of lost wages and out-of-pocket expenses incurred. See Report & Recommendation at 47. Counsel concedes this point and attempt to cure this defect by providing details supporting their request for $8,150 for Mr. Hubbard, $4,000 for Mr. Kassan, and $3,600 for Mr. Frank. See Objections Memo at 37-38. As discussed earlier, under § 636(b)(1), the court is permitted, in its discretion, to receive supplemental evidence when reviewing a magistrate judge's report and recommendation, but "a party has 'no right to present further testimony when it offer[s] no justification for not offering the testimony at the hearing before the magistrate.'" Paddington Partners, 34 F.3d at 1138 (quoting Pan Am World Airways, 894 F.2d at 40 n.3). District courts have declined to consider supplemental evidence on the ground that such "piecemeal presentation of evidence is exceptionally wasteful of the time of both the magistrate and district judges." Morris v. Amalgamated Lithographers of America, Local One, 994 F. Supp. 161, 163 (S.D.N.Y. 1998); see also U.S. Fid. & Guar. Co., 62 F. Supp. 2d at 917-18 (noting that supplemental evidence

not presented before the magistrate leads to the frustration of "systemic efficiencies" and permits a litigant to unfairly test its case before the magistrate (quotation marks omitted)). Here, counsel offer no explanation for their failure to produce the evidence necessary for Judge Go to make her determination. The court therefore declines to consider the supplemental evidence provided by counsel.[9]

Having conducted a de novo review of the record and addressed class counsel's objections, the court hereby adopts Judge Go's recommendations on counsel's fee application in their entirety pursuant to 28 U.S.C. § 636(b)(1). Accordingly, this court (1) awards attorneys' fees in the amount of $2,750,000, representing 20% of the Settlement Fund; (2) grants reimbursement of expenses in the amount of $516,194.26; (3) grants counsel's request for pro rated interest; and (4) denies the request for incentive awards for lead plaintiffs and the class representative.

D. *Motion for Protective Order to Seal Counsel's Time Records*

Counsel also submitted a motion for a protective order to seal time records provided to Judge Go for her evaluation of their fee application. Counsel argue that the time records represent work product and any public disclosure may compromise their case were the court to reject the settlement and permit the case to proceed. Given that the court has approved the settlement in this opinion, counsel's argument for seeking a protective order no longer appears relevant. Moreover, the time records, which merely consist of brief descriptions of the hours

---

[9] Counsel have also submitted copies of fee applications from other cases and news articles. See Objections Memo Exs. Counsel cite the documents to support the claim that their fees are comparable to similar firms with expertise in securities class actions. As counsel have not explained why they did not submit these documents to Judge Go, the court declines to consider them.

expended by counsel on this case, do not appear to reveal the client's motivation in seeking representation, counsel's litigation strategy, or any other form of work product. See In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003) (noting that "the principle underlying the work product doctrine [is to] shelter[] the mental processes of an attorney as reflected in documents prepared for litigation"). However, if they so choose, counsel may resubmit a motion for a protective order, specifying which portions of the time records are protected by the work-product doctrine and require redaction.

## CONCLUSION

For the reasons stated above, the settlement class is certified and the settlement is approved. In addition, based on a de novo review of the record, the court adopts the recommendations of Magistrate Judge Go in their entirety pursuant to 28 U.S.C. § 636(b)(1). Accordingly, the court (1) awards attorneys' fees in the amount of $2,750,000, representing 20% of the Settlement Fund; (2) grants reimbursement of expenses in the amount of $516,194.26; (3) grants counsel's request for pro rated interest; and (4) denies the request for incentive awards for lead plaintiffs and the class representative. The court also denies counsel's motion for a protective order as moot, but grants counsel leave to resubmit the motion, specifying which portions of the time records should be redacted as privileged.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: September 29, 2005
       Brooklyn, New York

26

SERVICE LIST:

**Counsel for the Plaintiff Class:**

Mark David Smilow
Weiss & Lurie
551 Fifth Avenue
Suite 1600
New York, NY 10176

S. Gene Cauley
Cauley Bowman Carney & Williams LLP
P.O. Box 25438
Little Rock, AR 72221

**Counsel for the Defendants:**

Michael J. Chepiga
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3909

Paul Christopher Gluckow
Simpson Thacher & Bartlett
425 Lexington Avenue - 29th Floor
New York, NY 10017

Allison Rebecca Kimmel
Simpson Thacher & Bartlett
425 Lexington Ave.
New York, NY 10017

Steven J. Roman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037